Plaintiff's husband, Joe Booker, was for many years an employee of the defendant company. On account of illness, he was paid by the company from September, 1938, to May, 1939, sick benefits under what is known as the "Benefit Plan" set up by the company for the benefit of its employees. During the latter part of May, 1939, said Joe Booker was retired on a pension or annuity of $30 per month for the remainder of his life. He died in September following.
The benefit plan referred to above provides for a death benefit, payable to certain beneficiaries of a deceased employee, the amount of which varies according to the length of service of the deceased employee. The amount of the death benefit in this case, if any is due, is conceded to be twelve times the monthly annuity, or $360. The plan stipulates that the death benefit shall be paid to the widow (or widower) as a preferred beneficiary "if living with or dependent on the decedent for support at the time of his death to the extent of at least 20% of his pay".
This suit is by the plaintiff as the widow of the deceased employee to recover the death benefit provided in said plan. The defense to the suit is that plaintiff was not living with nor dependent on the deceased employee as required by said plan. Another defense urged is that the plan is a charity or gratuity on the part of the defendant company furnished to its employees at no cost to them; that the plan provides that all matters relative to its administration, interpretation and application shall be under the direction of a committee appointed by the board of directors of the company, and that the decisions of this committee are conclusive and binding on the employee; that plaintiff's claim was rejected by the said committee after it had been *Page 703 
furnished by the plaintiff with the facts relative to her claim.
The trial court dismissed plaintiff's suit on the ground that she had failed to prove that she was living with her deceased husband or dependent on him at the time of his death as contemplated by said plan in order to entitle her to the death benefit. From this judgment of dismissal, she has appealed.
The record shows that plaintiff and the deceased employee were legally married in September, 1917, and lived together as man and wife until 1928, when the deceased took up with another woman, Sedonia Hare, and lived with her in open concubinage until his death. In 1929, plaintiff filed charges of nonsupport against her husband, and he was ordered to pay her alimony of $20 per month. This alimony was paid for a little over a year. In April, 1939, only a few months before he died, Joe Booker signed a statement in connection with his retirement application in which he stated that he was separated from his wife and did not mention her as a dependent. In July, 1939, less than two months before his death, Booker filed a suit for divorce against plaintiff alleging in his petition that he and his wife had been living separate and apart since August, 1928. This petition was verified by Booker's attorney on information and belief and was served on plaintiff but no further proceedings were had in the case before Booker's death.
In addition to her own testimony, plaintiff relies on the testimony of three or four other witnesses to support her claim. While plaintiff admits that she and her husband were separated in 1928 and that she prosecuted him for desertion and nonsupport, she claims that he continued to visit her at frequent intervals after he discontinued paying alimony under the court order and continued to give or send her money from time to time. The last time that Booker was at her house was in August, 1938, a little over a year before he died, at which time he stayed from about 9 o'clock in the morning until 2 o'clock in the afternoon. She says that on several occasions before that time he came to her home and spent the night with her. She says that the last money she got from him was in November, 1938, when he paid her $8. He sent her $10 while she was in Alabama that year, sent her some money while she was in the Charity Hospital and gave her $9 in August of that year after she came back from the hospital. She states that he sent her some money by her daughter around Easter and the Fourth of July, 1939.
Eleanor Scofield, plaintiff's daughter, says that Booker came to her mother's home every week or so during the ten years that they were separated up to 1938, and that he frequently gave her mother some money. She says that she got as much as $40 from Booker to give her mother during the last twelve or eighteen months of his life, the last of these payments being $10 given her around the Fourth of July, 1939.
Nancy Scott, who seems to be an aunt of plaintiff, testified rather profusely about Booker going to see plaintiff — in fact, she says he was at her home visiting her every time the witness went to Aline's home which was almost every day, and he frequently gave her money to give Aline and would ask about her and displayed considerable solicitude for Aline's health and welfare. Idell Quiett, a brother of plaintiff, also testified as to Booker's frequent visits to his wife and his great solicitude for her welfare. He gives an account of a rather unusual occurrence that took place in 1938 between plaintiff and her husband who was living with another woman. He says that he met Booker in a store and the latter asked about his wife's health and offered to give him some money for her; that they both got in Booker's car and went to Aline's home where they sat down and ate; that Booker said "this smells like old times", and on being asked what he meant by the remark, he replied, "good old greens". There is some evidence by another witness to the effect that he stayed at plaintiff's home in 1936 and 1937 and that Booker spent the night there with his wife once every two or three weeks or so, and that he occasionally saw him give her money.
The trial judge, in his reasons for judgment and in commenting on the testimony of these four witnesses, states that he is not impressed with their testimony. A careful reading of their testimony, together with that of plaintiff, leads us to suspect that much of their testimony is shaped to meet the requirements of plaintiff's case rather than a strict adherence to the true facts of the case.
Sedonia Hare testified that she and Booker lived together as man and wife from March, 1929, until Booker died more than ten years later; that he gave her his pay *Page 704 
checks, and she cashed them all; that he never spent his nights away from her and never stayed with his wife. Booker's sister testified that her brother never lived with his wife after he and Sedonia Hare began living together in 1929. Mr. Farrier, the man who has charge of the company's benefit plan in Baton Rouge, testified that Aline Booker and her daughter, Eleanor Scofield came to his office after the death of Booker to see whether or not Aline was entitled to anything under the benefit plan; that both of them told him that Booker had done nothing for Aline since he stopped paying alimony, and that Booker had deserted her for Sedonia Hare.
It is obviously the hope and purpose of the plaintiff to bring her case within the ruling of the Supreme Court in the case of Robinson v. Standard Oil Company, 194 La. 904, 195 So. 351, where the same benefit plan was involved and a somewhat similar question was presented. However, unless we overrule the finding of fact of the trial judge and accept the testimony of plaintiff and her witnesses against our own judgment, the present case finds no support in the Robinson case. We are satisfied from all the facts and circumstances in this case that there was a separation both in fact and intent between plaintiff and her husband; that the latter was not only estranged and separated from his wife, but had been living in open and notorious concubinage with another woman for more than ten years prior to his death, and for that reason the principles applied by the Supreme Court in the case of Milton v. Long-Bell Lumber Co.,165 La. 336, 115 So. 582, apply in this case rather than those of the Robinson case.
We construe the plan to mean that for a widow to be a dependent and entitled to the death benefit if she is not living with the deceased employee at the time of his death, he must have contributed as much as 20% of his pay for her support. Even accepting the testimony of plaintiff and her witnesses at its full face value, we are not able to determine that Booker contributed as much as 20% of his pay for the support of his wife for the past year or two prior to his death.
Having reached the conclusion that the trial judge correctly decided the case on the facts, it is unnecessary for us to pass on the other defense urged by the defendant.
For the reasons assigned, it is ordered that the judgment appealed from be and the same is hereby affirmed. *Page 742